**(119 So. 532)**

No. 29578.

**LOUISIANA GREYHOUND CLUB, Inc., v. CLANCY, Sheriff, et al.**

Nov. 26, 1928. Rehearing Denied Jan. 2, 1929.

W. A. Porteous, Jr., and M'Caleb & M'Caleb, all of New Orleans, for appellant.

Ernest M. Conzelmann, of Gretna, and Edward Rightor, of New Orleans, for appellee Clancy.

Fred A. Middleton, of New Orleans, for appellees Fleury and Higgins.

THOMPSON, J. This is an appeal from a judgment which denied the plaintiff an injunction to restrain the sheriff and district attorney from enforcing or in any manner attempting to enforce against the plaintiff the provisions of Act 70 of 1928.

The plaintiff corporation was organized on December 11, 1926, with an authorized capital stock of $150,000, and one of the many declared objects for which it was organized was to promote dog racing for profit, and, we might say incidentally, for entertainment and amusement of the public.

To this end the corporation leased a certain tract of land in said parish of Jefferson and situated within a distance of 15 miles beyond the corporate limits of the city of New Orleans.

The price of the lease was $8,400 per year, payable in advance.

Early in February, 1927, the corporation caused to be laid out and constructed on the leased land an oval, circular race track of less than a mile in length for dog-racing purposes.

It is claimed that this track, together with the necessary apparatus, mechanism, grand stand, fences, etc., cost the company $135,000.

The racing was carried on at night between the hours of 8 and 10:30 of the clock, and the returns from admission fees, to say nothing of revenues derived otherwise, proved quite profitable.

The right to the injunction is claimed on

the ground that the Act No. 70 of 1928 is unconstitutional, null, and void both as to form and as to substance. As to form, that said act contravenes article 3, § 16, Constitution 1921, in that its title indicates and the act itself actually embraces more than one object, and as to substance, that the act violates the Fourteenth Amendment of the Federal Constitution and article 1, § 2, of the state Constitution, by depriving plaintiff of its liberty of contract and of its property without due process of law.

There is no contention that the title of the act does not sufficiently indicate the object of the act, nor that the body of the act contains any matter not covered by the language of the title.

So that if the act is not obnoxious as containing more than one object, it is conceded to be perfectly valid as to form.

The title of the act is to levy, collect, and enforce payment of a license tax on persons, firms, etc., engaged in or pursuing any business whereby horses or dogs or other animals are run or raced and admission fees are charged spectators, or where no admission fees are charged spectators, the revenue or profit being derived from sources other than admission fees, or where said horses, dogs, or other animals are raced for purses or profit or revenue of any kind or character; and prescribing the mode and method by which said license tax shall be collected; and reserving to the Legislature of Louisiana all lawmaking dealing with said racing; and providing a penalty for the violation hereof; and to prohibit such races after 6 p. m. and before 6 a. m.; and to prohibit such races on any track measuring less than 1 mile operated for profit or revenue in the corporate limits of any city or town of 25,000 population or over, or within a distance of 15 miles beyond the corporate boundaries or limits of such city or town; and providing penalties for the violation of the provisions of this act; and repealing all laws or parts of laws in conflict herewith, particularly Act No. 352 of 1926.

The body of the act deals with every phase of the subject indicated in the title:

Thus section 1 levies and graduates the license into five classes upon the basis of daily receipts from admission fees.

Section 2 levies and graduates the license into five classes based upon the daily attendance of spectators where no admission fees are charged but the business is otherwise conducted for revenue or profit.

Section 3 provides that the license tax and fees so levied shall not apply to race tracks offering purses of less value than $100.

Section 4 provides that the license shall be collected daily, and provides further that no political subdivision of this state shall pass or enforce any local law or ordinance created by itself on the subject of horse, dog, or other animal racing except license tax or ordinances, all law making dealing with said racing being expressly reserved to the Legislature.

Section 5 provides that all suits or rules for the collection of the license shall be summary and tried in accordance with the law in force for the collection of delinquent licenses or taxes.

Section 6 provides how the amount of the license shall be determined.

Section 7 provides that the act shall not apply to persons conducting state, district, or parish fairs for the purpose of exhibiting agricultural or manufactured products or natural resources where such racing is conducted for sport and as an incident for amusement and entertainment and not for profit.

Section 8 provides for a penalty for the operation of a race track in contravention of the act without having first paid the license.

Section 9 prohibits all animal racing for

profit between the hours of 6 p. m. and 6 a. m. and prohibits such racing on any track measuring less than 1 mile operated for profit or revenue in the corporate limits of any city or town of 25,000 population or over, or within 15 miles beyond the corporate limits of such city or town, and providing a penalty for the violation of any of the provisions of said section 9.

Section 10 repeals all laws or parts of laws in conflict with the act and particularly Act No. 352 of 1926.

The counsel for the plaintiff, in argumentative support of the contention that neither the title nor the body of the act expresses any general object to which all of the provisions may fairly converge, divides the subject-matter of the title and of the act so as to embrace five different objects, as follows:

Object 1. To levy, collect, and enforce payment of a license tax on the business of animal racing, duly graduating the license.

Object 2. To prohibit political subdivisions of the state from passing or enforcing any local law or ordinance on the subject of animal racing.

Object 3. To prohibit animal racing for profit between the hours of 6 p. m. and 6 a. m.

Object 4. To prohibit animal racing for profit on any track measuring less than 1 mile in the corporate limits of any city or town of 25,000 population or over, or within a distance of 15 miles beyond the corporate limits of such city or town.

Object 5. To repeal Act 352 of 1926 and all conflicting laws.

The obvious answer to the argument is that the main purpose, and indeed the only purpose, of the act was to regulate animal racing for profit in this state and to prohibit said racing under certain conditions as designated and named in the act, and each and every stipulation contained in the counsel's analysis of the act and its title, considered singly or as a whole, point unmistakably to the sole and one object, that of licensing, regulating, and controlling animal racing for profit. There is not a single provision in the statute or its title which can under any legitimate or reasonable method of interpretation lead the judicial mind away from this general purpose of the act. There is not one provision which introduces into the title or the body of the act any matter, object, or purpose which is foreign to the subject of animal racing for profit and its regulation and control.

To levy and provide for the collection of a license is germane to the subject of animal racing and to the one object of the act to regulate and control. To provide a penalty for failure to pay the license is equally germane to main object as a means of enforcing the payment of the license.

To prohibit subdivisions of the state from enacting laws under a power reserved to the state by the Legislature as one of the means of enforcing the policy of the state to regulate and control animal racing cannot be properly said to introduce into the act a matter foreign to the general purpose of the act.

And the same might be said as to the provisions regulating the length of the race track, the prohibition of night racing, and the prohibition of racing for profit within cities or towns having a certain population or within certain distance of such cities or towns. All of these provisions is but a combination of means to a common end and purpose, that of regulating and controlling animal racing for profit.

To say that a general or special repealing clause is a separate distinct and foreign object to a legislative act appears to the court quite novel, and if that view was adopted it would strike down every act of the Legislature which sought expressly to repeal laws inconsistent therewith.

If the position of counsel were adopted and the act declared unconstitutional as a whole for the reasons suggested, then in order to accomplish the purpose attempted by the Legislature there would have to be ten separate acts passed. One to levy a license; one to provide a penalty for failure to pay the license; one to fix the hours within which racing is prohibited; one to fix the length of the race track; one to prohibit subdivisions of the state to legislate on the subject of racing; and five separate acts repealing laws inconsistent with the provisions of the several acts.

The contention per force carries with it its own fallacy and refutation.

Our conclusion is that the act under consideration contains but one general object and purpose and is not obnoxious to the constitutional provision which demands that every act of the Legislature shall contain but one object and that object shall be indicated in the title.

The second ground of attack on the act in our opinion is equally untenable.

It needs no citation of authority to show that the regulation or the absolute prohibition of animal racing comes legitimately within the scope of the police power of the state, and the sole question under this phase of attack on the act is whether the act is a reasonable exercise of the inherent police power of the state, or is so unreasonable and arbitrary as to amount to an infringement on the property rights of the plaintiff.

If the statute comes within the proper and legitimate exercise of the police power of the state, then it cannot be said to interfere with the liberty of contract nor as taking plaintiff's property without due process of law, since the very foundation of the police power is the control of private interests for the public welfare, and a statute of a state is not rendered unconstitutional by the mere fact that private rights of person or property are subjected to restraint or that loss will result to individuals from its enforcement. 12 C. J. p. 931.

The same author declares on page 932 that it is the duty of the courts to enforce the state's police regulations enacted by the Legislature in good faith and with reasonable and appropriate regard for the protection which the state owes to the life, health, and property of her citizens. The Legislature is the sole judge as to all matters pertaining to the policy, wisdom, and expediency of statutes enacted under the police power, and it is only left to the courts to determine whether legislation enacted in the exercise of the police power is really such and whether regulations prescribed by the Legislature are unreasonable or are otherwise unconstitutional.

It may be conceded for the purpose of this discussion that good faith on the part of the Legislature is always presumed, and the universal rule is that where a law is enacted under the exercise or pretended exercise of the police power, and appears upon its face to be reasonable and not arbitrary, the burden is upon the party assailing such statute to establish that its provisions are so arbitrary and unreasonable as to bring it within the prohibition of the Fourteenth Amendment to the Federal Constitution.

No sufficient reason is suggested, and we have not been able to discover any, for saying that the statute in question is either arbitrary or unreasonable, or partisan and discriminatory. It is not unreasonable to levy a license upon animal racing. Nor is it unreasonable to regulate the length of the race track or to fix the hours within which races may not be run.

It may be that there was concealed a motive on the part of the Legislature to discriminate against dog racing and in favor

of horse racing in fixing the hours and the length of the track, but no such motive is to be ascertained from reading the act. It makes no such discrimination. Its provisions apply alike to all animal racing.

We may say here of the act in question what the Supreme Court of the United States said with reference to a racing statute of California in the case of the Western Turf Association v. Hyman Greenberg, 204 U. S. 359, 27 S. Ct. 384, 51 L. Ed. 520:

"Decisions of this court, familiar to all, and which need not be cited, recognize the possession, by each state, of powers never surrendered to the general government; which powers the state, except as restrained by its own Constitution or the Constitution of the United States, may exert not only for the public health, the public morals and the public safety, but for the general or common good, for the well-being, comfort and good order of the people.

"The enactments of a state, when exerting its power for such purposes, must be respected by this court, if they do not violate rights granted or secured by the supreme law of the land. * * * The statute is only a regulation of places of public entertainment and amusement upon terms of equal and exact justice. * * *"

"It is neither an arbitrary exertion of the state's inherent or governmental power, nor a violation of any right secured by the Constitution of the United States."

It may be stated that the case from which we have quoted was one where the Turf Association had sold a ticket of admission to its race course and for cause undisclosed by the record ejected the ticket holder. Suit was brought for damages and damages were awarded in the sum of $1,000. The association there made the same defense as is made here; that is, that the statute under consideration sought to abridge the privileges and immunities of citizens of the United States and to deprive them of liberty and property without due process of law and to deny to them the equal protection of the laws.

In concluding its opinion the court said:

"The race-course in question being held out as a place of public entertainment and amusement is, by the act of the defendant, so far affected with a public interest that the state may, in the interest of good order and fair dealing, require defendant to perform its engagement to the public," etc.

We repeat that we are unable to discover anything in the act under consideration that is arbitrary and unreasonable or that in any manner discriminates against the plaintiff. The provisions of the act are fair and just alike to every class of animal racing.

The judgment appealed from is affirmed.

ST. PAUL, J., concurs in the decree.